**FORT WORTH STAR–TELEGRAM, Star–Telegram, Inc., and Star–Telegram Newspaper, Inc., d/b/a Fort Worth Star–Telegram, Appellants,**

v.

**John STREET, Appellee.**

**No. 2–01–105–CV.**

Court of Appeals of Texas, Fort Worth.

Nov. 8, 2001.

Rehearing Overruled Dec. 20, 2001.

Haynes and Boone, LLP, Thomas J. Williams, Fort Worth, for Appellant.

Law Offices of Art Brender, Jason C.N. Smith, Art Brender, Fort Worth, for Appellee.

PANEL A: CAYCE, C.J., LIVINGSTON and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

### I. INTRODUCTION

The Fort Worth Star–Telegram, Star–Telegram, Inc., and Star–Telegram Newspaper, Inc., D/B/A Fort Worth Star–Telegram (collectively "the Star–Telegram"), appeal from the trial court's denial of their motion for summary judgment. Appellee, John Street, sued the Star–Telegram for libel arising from a Letter to the Editor published in the *Fort Worth Star–Telegram.* The letter addressed the 1992 general election for the office of Judge, 48th District Court, Tarrant County, Texas. Specifically, the letter focused on Street's campaign signs.

In this interlocutory appeal, the Star–Telegram raises three issues contending that the trial court erred in denying its motion for summary judgment. Initially, it maintains it conclusively established that the Letter to the Editor is a constitutionally protected expression of opinion. Secondly, it relies on the defense of substantial truth to assert that the letter's factual assertions create no liability as a matter of law. Finally, the Star–Telegram maintains that it established that the letter was published without "actual malice" as a matter of law.

Based on these three points, the Star–Telegram asks us to reverse the order of the trial court and render judgment that its motion for summary judgment be granted. We agree with the Star–Telegram that the letter was published without actual malice, and therefore reverse the order and render judgment for the Star–Telegram.

### II. BACKGROUND

**A. Facts**

In November of 1992, John Street, a former district judge, was the Democratic

candidate for Judge of the 48th District Court of Tarrant County, Texas. In 1984, Street had been elected to the office of Judge of the 352nd District Court in Tarrant County, Texas. Street was defeated for reelection to the 352nd District Court in the 1988 general election. Street did not hold office between the dates of December 31, 1988 and March 1992.

In April of 1992, Governor Ann Richards appointed Street to fill a vacancy as Judge of the 48th District Court. This appointment was to last until December 31, 1992. In the general election of 1992, Street was the Democratic candidate for Judge of the 48th District Court, opposed by Republican candidate Dixon Holman. Street's campaign signs read, "Keep Judge Street. Judge 48th District Court."

On Sunday before the general election, a Letter to the Editor appeared in the Star–Telegram. The letter was written by Allison White of Fort Worth, and was displayed under the caption "No honors for Street." The letter reads, in its entirety, as follows:

> I am appalled, as should be all voters of Tarrant County, when I see giant signs urging us to keep John Street as our judge. Keep him infers he is in office now. He is not.
>
> We voted this mean-spirited, controversial man out of office last term. Now to add to the above adjective is the word dishonest. Do not be fooled, electorate. This man is not worthy of the title, "Your Honor."
>
> Allison White
>
> Fort Worth

Street argues that there are four inaccuracies in this Letter to the Editor. First, it is untrue that he was not in office because he was the Judge of the 48th District Court at the time. Secondly, it is untrue that he is mean-spirited because his conduct disproves this. Thirdly, it is untrue that he is dishonest because, as his signs imply, he was in office at the time. Finally, it is untrue that he is not worthy of the title of "Your Honor" because he, in fact, was a judge at the time.

**B. Procedural History**

Street lost the general election. On January 18, 1994, he filed suit against the Star–Telegram, Allison White, and four employees of the Star–Telegram. Street later non-suited all four employees and never served Allison White. In Street's suit, he alleged that the Star–Telegram committed libel and slander, and also sought damages for intentional infliction of emotional distress and invasion of privacy. The Star–Telegram subsequently filed a motion for summary judgment alleging: that the statements in the publication were either true or substantially true; that there were no false or defamatory statements about Street; that all of the statements made were constitutionally protected statements of opinion; that the publication was a fair comment on a matter of public concern and was made without malice; and that even if the statements of fact were false, Street was a public official and there is no evidence of actual malice. Star–Telegram argued in the alternative that its employees were not responsible because they did not personally write or edit the letter.

The trial court denied the Star–Telegram's motion for summary judgment without stating specific grounds. The Star–Telegram timely perfected this interlocutory appeal.

**III. DISCUSSION**

**A. Interlocutory Appeal**

■ Appellate jurisdiction is limited to final judgments and interlocutory appeals allowed by statute. *Lehmann v. Har–Con*

*Corp.*, 39 S.W.3d 191, 195 (Tex.2001); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992). The Texas Civil Practice and Remedies Code, section 51.014(6), permits appeal of an interlocutory order denying a motion for summary judgment based upon a claim against, or a defense asserted by, a member of the media arising under the First Amendment of the United States Constitution or Article 1, Section 8 of the Texas Constitution. TEX. CIV. PRAC. & REM. CODE § 51.014(6) (Vernon Supp.2001).

### B. Standard of Review

■ We apply the same de novo standard of review on appeal whether an order grants or denies a motion for summary judgment. *Gaylord Broad. Co. v. Francis*, 7 S.W.3d 279, 283 (Tex.App.—Dallas 1999, pet. denied); *San Antonio Express News v. Dracos*, 922 S.W.2d 242, 247 (Tex.App.—San Antonio 1996, no writ). Likewise, summary judgment is reviewed in public figure or public official defamation cases under the same standard as in other cases. *See Huckabee v. Time Warner Entm't. Co.*, 19 S.W.3d 413, 423 (Tex.2000) (holding that "we decline to adopt the clear-and-convincing standard at the summary judgment stage of a public-figure defamation case").

■ A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to come forward with competent controverting evidence of a genuine issue of material fact with regard to the element challenged by the defendant.

*Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). When reviewing a summary judgment, the appellate court must take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985).

■ The scope of review from a summary judgment is limited. We may not consider on appeal, as grounds for reversal, issues not expressly presented to the trial court by written motion, answer, or other response. TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). In instances such as this one, where the trial court has denied a motion for summary judgment, when the trial court's order fails to specify the specific grounds relied upon for its ruling, the court of appeals will reverse and render judgment if there are any meritorious grounds stated in the motion. *Associated Press v. Cook*, 17 S.W.3d 447, 452 (Tex.App.—Houston [1st Dist.] 2000, no pet.). Conversely, the motion for summary judgment must state the specific grounds on which judgment is sought, and a summary judgment may not be granted on grounds not raised by the movant in his motion. TEX.R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex.1993).

### C. Defamation

■ The threshold question of law is whether White's statements are reasonably capable of defamatory meaning. *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex.1987); *Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 642 (Tex.App.—Fort Worth 1998, no pet.). Generally, a statement is defamatory if the words tend to injure a person's reputation. TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997). That does not mean there

is defamation every time a plaintiff feels his reputation is injured by a statement.

 Despite its broad legal definition, defamatory expression is not actionable under the First Amendment unless a reasonable person would find the statement, in context, states an actual fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, 110 S.Ct. 2695, 2707, 111 L.Ed.2d 1 (1990); *Hustler Magazine v. Falwell*, 485 U.S. 46, 56, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988). In this case, it is undisputed that Street was a public official at the time of the alleged libel. For a public official to maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a false statement about the plaintiff; (2) that was defamatory; (3) while acting with actual malice. *Cook*, 17 S.W.3d at 452 (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989)). To have prevailed on its motion for summary judgment, the Star–Telegram must have disproved at least one essential element of Street's defamation claim. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998), *cert. denied*, 526 U.S. 1051, 119 S.Ct. 1358, 143 L.Ed.2d 519 (1999); *Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 476–77 (Tex.1995).

Because we resolve this case solely on the issue of whether the Star–Telegram negated actual malice as a matter of law, we assume without deciding that the Letter to the Editor either expressly or implicitly made false statements about Judge Street. *See Huckabee*, 19 S.W.3d at 420 (addressing actual malice without deciding if the statements about Judge Huckabee were false). Further, we assume without deciding that the letter's overall portraiture of Judge Street was not substantially true. *Id.; McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex.1990).

 Because Street must prove actual malice in order to prevail at trial, the Star–Telegram is entitled to summary judgment as to any statement on which it can negate actual malice as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 555 (Tex.1989). In defamation cases actual malice is a term of art. It does not include ill-will, spite, or evil motive. *Huckabee*, 19 S.W.3d at 420; *Casso*, 776 S.W.2d at 558. Instead, actual malice is the making of a statement with knowledge that it is false or with reckless disregard as to its truth. *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex.1989); *see also* Mary A. Sprague Langston, Comment, *Libel Litigation in Texas: The Plaintiff's Perspective*, 13 St. Mary's L.J. 978, 987 (1982) (noting that actual malice refers to the "actual state of defendant's knowledge at the time of the publication"). Reckless disregard is also a term of art. To establish reckless disregard, a public official or public figure must show that the publisher "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); *accord Huckabee*, 19 S.W.3d at 420.

 The Star–Telegram argues that its employees had no knowledge of the false nature of the letter or reckless disregard as to the truth of its contents. As summary judgment evidence on this matter, the Star–Telegram relies on John Penn's affidavit and deposition testimony. Penn was the Letters Editor at the Star–Telegram at the relevant time. In Penn's affidavit he outlined his duties as "verifying that the letter had actually been written by the person whose name was signed, editing the letter, if necessary, and approving the letter for publication." Penn's affidavit further noted that he received White's letter, verified that she wrote it, and approved it for publication.

In his affidavit, Penn expressly denies knowledge of the false nature of the letter or reckless disregard for its truth. Penn's affidavit reads, in pertinent part:

I believed then and believe now that the letter is a fair and reasonable comment on Mr. Street's qualification for public office.... I was aware at the time that Mr. Street had not been elected to the 48th District Court in 1992 and I believed that was what the letter referred to when it criticized John Street's campaign signs.... I did not believe the letter contained any false statements of fact about Mr. Street, nor did I have any serious doubt as to the accuracy of the factual assertions in the letter.

Our summary judgment rule allows the granting of a summary judgment based on uncontroverted testimonial evidence of an interested witness if the evidence "is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *Casso*, 776 S.W.2d at 558 (citing TEX.R. CIV. P. 166a(c)). In this context, "could have been readily controverted" means the testimony at issue is of a nature that can be effectively controverted by opposing evidence. *Id.* On the one hand, if the affiant's credibility is likely to be a dispositive factor in the resolution of the case, summary judgment is inappropriate. *Id.* On the other hand, if the non-movant must, in all likelihood, bring independent evidence in order to prevail, then summary judgment is proper in the absence of controverting proof. *Id.*

Street relies on *Casso* to establish that Penn's affidavit does not sustain summary judgment. Specifically, Street relies on the court's statement, "[if Casso's affidavit] attempts to negate actual malice, it provides no information as to Casso's knowledge that the statements were not false or were not made with reckless disregard to

their truth or falsity." *Id.* at 559. We believe the facts in *Casso* are distinguishable.

In *Casso*, the court addressed the showing a defendant must make to obtain a summary judgment in a defamation claim brought by a public official or public figure. *Id.* at 552. The case centered on a statement made by Dr. Ramiro Casso during his race for mayor of McAllen, Texas, against Othal E. Brand. *Id.* Brand took issue with Casso's statements, made in a radio broadcast, that Brand knew of and supported certain alleged acts of police brutality. *Id.* Brand also took offense to Casso's statements made in *The Nation Magazine* that Brand shut hospital doors to the poor and ran the city government with an iron fist. *Id.* at 552–53.

The court held that Casso met his burden to provide sufficient evidence to support summary judgment on all the statements in the radio broadcasts. *Id.* at 553. The court also noted that Brand failed to present controverting proof and that summary judgment on those statements was proper. *Id.* Nonetheless, the court found that Casso failed to negate actual malice as to his statements in *The Nation Magazine*. The court recited Casso's affidavit, which read:

[I]t is not my fault what THE NATION MAGAZINE and its writers stated in their article. That is another case, and I understand that a judgment has already been rendered against Brand.

At no time did I ever act with malice toward Othal Brand, and never did I make an untrue statement knowingly. I regret that he is such a sensitive person, but all I did was to make logical and justified inference [sic] from facts known to me personally.

*Id.* at 559.

After reciting the relevant parts of the affidavit, the court held that the affidavit

was not sufficient summary judgment proof. *Id.* The court reasoned that Casso's affidavit provided no information as to his knowledge that the statements were not false or were not made with reckless disregard as to their truth or falsity. *Id.* Specifically, the court articulates that Casso's affidavit fails to meet any of the tests of rule 166a and that "[i]t is not free from contradictions and inconsistencies, and it could not have been readily controverted." *Id.* (applying Tex.R. Civ. P. 166a).

Penn's affidavit is substantially different from Casso's. Penn's affidavit provides insight into what he thought the letter said and the factual basis for his understanding. Initially, Penn notes that he found Ms. White's letter to be "a fair and reasonable comment on Mr. Street's qualifications for public office and is a legitimate expression of a citizen's opinion concerning a candidate for public office." Significantly, Penn states that he knew Street was not elected to his seat as the 48th District Judge, and that he believed Ms. White's letter was specifically referring to that fact when it criticized Street's campaign signs. After making these affirmations, Penn concludes that he did not believe White's letter contained statements that were false nor did he "have any serious doubt as to the accuracy of the factual assertions in the letter."

Penn's deposition testimony also differs from the Casso affidavit and establishes both his belief in the truth of the letter's statements and a plausible basis for his belief. In Penn's deposition he acknowledged that while he knew Street was appointed, rather than elected, to the office of District Judge of the 48th District Court, he thought the letter was referring to Street's status as an elected official. Penn testified: "I interpreted the letter to mean that he was not [in office] in an elected capacity." Based on his library research of Street's elected official status, Penn concluded that the letter was both a fair statement of the author's opinion and was factual.

We believe Penn's affidavit and deposition testimony are similar to the affidavit held sufficient to sustain summary judgment for the defendant television station in *WFAA–TV, Inc. v. McLemore.* 978 S.W.2d at 574. In *McLemore,* the Texas Supreme Court held that actual malice was negated by the affidavit of Valerie Williams. *Id.* In Williams' affidavit, she detailed her belief that all her statements were true and established the basis for her beliefs. *Id.* In her affidavit, Williams set out a chronology of her activities in preparing her report. *Id.* The court concluded as a matter of law that "[t]his testimony as to Williams' beliefs and the basis for them was sufficient for WFAA to meet its burden of negating actual malice." *Id.* (citing *Casso,* 776 S.W.2d at 559).

We also believe Penn's affidavit and deposition testimony are highly analogous to both of Virginia Cotts' affidavits held sufficient to negate actual malice as a matter of law for television media defendant Home Box Office (HBO) in *Huckabee v. Time Warner Entertainment Company.* In *Huckabee,* HBO presented the affidavits of four employees. 19 S.W.3d at 423. The court, however, focused on Cotts' affidavits. *Id.* at 424. In Cotts' initial affidavit she explained the steps she took in researching the many stories presented in HBO's documentary presentation *Women on Trial. Id.* Her first affidavit noted that, in order to ensure the documentary's accuracy, she reviewed over two thousand pages of material in reference to the stories presented in the documentary. *Id.* Based on this extensive review, her first affidavit concluded that the film's depiction of the case involving Judge Huckabee "was

accurate and that she had no doubts regarding this account." *Id.*

Cotts' second affidavit particularized her reasons for doubting a doctor's testimony regarding a child abuse case presided over by Judge Huckabee. *Id.* Cotts' detailed reasons included: her own viewing of the child victim's videotaped statements, the improbability of the doctor's theory, the corroboration of the child's initial statements, contravening prior statements made by the doctor in scholarly works, and the child's prior injuries. *Id.* Cotts also provided notes indicating that she did not believe the doctor's account while she was interviewing him. *Id.* Based on Cotts' affidavits, and the affidavits of three other interested witnesses, the court concluded that "all four of HBO's affidavits satisfied the Rule 166a(c) requirements" and as a matter of law, negated actual malice. *Id.*

Similarly, in *San Antonio Express News v. Dracos*, the San Antonio Court of Appeals held that Jeanne Jakle's affidavit, and other summary judgment evidence, was sufficient to support summary judgment for the defendant newspaper. 922 S.W.2d at 255–56. In *Dracos*, the San Antonio Express News wrote a column about how one of KENS TV's former investigative journalists left the local San Antonio television station. *Id.* at 246. Jakle, the author of the column, established in her affidavit that she believed the statements in her article were true or that she "did not have a high degree of awareness as to their falsity." *Id.* at 256. The court held that her affidavit, alongside other summary judgment evidence, corroborated that she thought the information was correct when she wrote the column. *Id.*

Correspondingly, in *Johnson v. Southwestern Newspapers Corporation*, the Amarillo Court of Appeals found the affidavits of three newspaper employees sufficient to support summary judgment for the newspaper defendant. 855 S.W.2d 182, 187 (Tex.App.—Amarillo 1993, writ denied). In *Johnson*, the plaintiff, Ed Johnson, brought a libel suit against the *Amarillo Daily News* for reporting that Johnson, the head coach of an Amarillo High School football team, started a brawl with the visiting team in the locker rooms after his team lost a football game. *Id.* at 184. The affidavit of Jim Lexa author of the article, stated that "he believed [the article's] contents were factually correct; he did not include anything he believed, or even suspected, was false; the factual statements were based on reliable, identifiable sources; and he based his opinions on those facts." *Id.* at 187. Affidavits by the editor of the article and another newspaper employee echoed Lexa's statements. *Id.*

Johnson provided controverting affidavit and deposition testimony indicating that "he felt an inadequate investigation was done in regard to the article." *Id.* at 188. In response to Johnson's summary judgment evidence, the court noted "the mere failure to inquire more fully into the accuracy of the statements in the article is insufficient to show actual malice." *Id.* The court concluded that, based on the summary judgment evidence presented, the newspaper established as a matter of law the absence of actual malice in publishing the article. *Id.*

Finally, and of independent relevance, in *El Paso Times, Incorporated v. Trexler*, the Texas Supreme Court held as a matter of law that there was no evidence to support a jury finding of actual malice when the Letters Editor failed to investigate a Letter to the Editor. 447 S.W.2d 403, 405–06 (Tex.1969). In *Trexler*, the supreme court addressed an appeal from newspaper defendant, the El Paso Times, claiming that the El Paso Court of Civil Appeals erred in reversing and remanding

for new trial the trial court's take nothing judgment for the plaintiff, Richard C. Trexler. *Id.* at 404. Trexler, then a professor at the University of Texas at El Paso, led an anti-Vietnam war demonstration that received a lot of publicity in El Paso. *Id.* The *El Paso Times* received a Letter to the Editor by Cris Loukes regarding Trexler's anti-war protest and published it two days after it received the letter. *Id.* at 406. In summary, the letter accused Trexler of treason and called for his removal from the classroom. *Id.* at 404.

At trial, the only evidence relied upon by Trexler to demonstrate actual malice was the testimony of William I. Latham, an employee of the El Paso Times. *Id.* at 406. Latham's job at the newspaper was to read all the Letters to the Editor and select and approve letters to be published in the "Speaking the Public Mind" column. *Id.* Latham testified that "he would not publish a letter if, in his opinion, it libeled a person." *Id.* Latham further testified that he "had no information which would lead him to believe plaintiff was guilty of treason." *Id.* It was also made known that neither Latham nor any other employee of the El Paso Times investigated any of the letters to determine their veracity. *Id.*

The court held that, as a matter of law, the evidence did not show actual malice "as defined in the *New York Times* case." *Id.* The court reasoned, as did the United States Supreme Court in both *New York Times* and *St. Amant,* "defendant's belief that the publication was substantially correct was a reasonable belief and therefore could not constitute actual malice even if the publication were not substantially correct." *Id.*

Because Penn's affidavit and deposition testimony establishes his belief in the challenged statements' truth and provides a plausible basis for his beliefs, like the affidavits sufficient in *Huckabee, McLemore, Dracos,* and *Johnson,* we hold that the Star–Telegram met its burden of negating actual malice as a matter of law. *See, e.g., Huckabee,* 19 S.W.3d at 424; *McLemore,* 978 S.W.2d at 574; *Dracos,* 922 S.W.2d at 256; *Johnson,* 855 S.W.2d at 188; *see also Trexler,* 447 S.W.2d at 406 (holding that a defendant's subjective reasonable belief that the publication was substantially correct was enough to negate actual malice in a letter-to-the-editor case).

 As Penn's affidavit provided ample grounds to grant summary judgment on the issue of actual malice, the burden shifted to Street to present evidence raising a fact issue as to actual malice. *Casso,* 776 S.W.2d at 558–59; *see also Huckabee,* 19 S.W.3d at 420 (declining to adopt heightened clear-and-convincing-evidence proof for element of actual malice in summary judgment public figure defamation cases). Street has presented no proof controverting these specific assertions. Street relies on Penn's deposition testimony that Penn knew that Street was appointed and not elected. Further, Street points out that Penn consulted with his supervisor about the matter, but did not disclose to her that Street was appointed. This is the sum and substance of Street's summary judgment proof. We hold that it is not enough to raise a fact issue as to actual malice.[1] None of Street's summary judgment evidence specifically controverts Penn's testimony that he believed the letter was a fair comment, an opinion, and was not untrue because

1. At best, Street's arguments and summary judgment evidence imply that Penn may have been negligent. The long standing rule in Texas is that failure to investigate the truth or falsity of a statement prior to publication does not equate to actual malice. *Trexler,* 447 S.W.2d at 406.

Street was appointed and not elected. Therefore, we sustain Appellant's third and final point. In doing so, we need not address Star–Telegram's first or second points, that the statements were protected as opinions or, in the alternative, they were substantially true. *Huckabee*, 19 S.W.3d at 420; *McIlvain*, 794 S.W.2d at 16.

### D. Grounds Not Raised in Summary Judgment Motion

As observed in our background discussion, aside from his allegation of libel, Street has also alleged the tort claims of intentional infliction of emotional distress and invasion of privacy in his initial pleadings. The Star–Telegram's motion for summary judgment only addressed Street's libel claim and fails to address Street's other claims. Further, Street has not pled these tort actions in the alternative, rather he argues them as independent claims and is seeking damages for them.[2]

Therefore, our grant of the Star–Telegram's motion for summary judgment is limited solely to those issues presented, and does not address whether there are material issues of genuine fact for either intentional infliction of emotional distress or invasion of privacy. Those claims remain pending in the trial court.

### IV. CONCLUSION

Having found no actual malice on the part of the Star–Telegram, we reverse the order of the trial court and render judgment that Star–Telegram's motion for summary judgment be granted. Further,

---

**2.** Specifically, Street's pleading on these claims reads, in pertinent part, "Plaintiff would show the acts of the Defendants herein constitute an invasion of his privacy and in-

we render judgment that Street take nothing as to his defamation claim.

tentional infliction of emotional distress, all of which occurred in each and every county in which Defendants' newspaper was printed...."