

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00334-CV

TRANSPORT CARE SERVICES
CORPORATION; ROBERT W.
HOGAN; AND JULIA HOGAN

APPELLANTS

V.

SCOTT SHAW

APPELLEE

----------

## FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellants Transport Care Services Corporation, Robert W. Hogan, and Julia Hogan appeal the trial court's judgment in favor of appellee Scott Shaw for defamation, intentional interference with past employment, and intentional interference with future employment.  We reverse and render.

---

[1]See Tex. R. App. P. 47.4.

**Background Facts**

Shaw is a licensed paramedic. He began working for Transport Care, an emergency medical services company owned by the Hogans, in June 2008. The Hogans issued Shaw a company credit card to use for business purchases. Shaw would occasionally use the credit card for personal expenses such as lunch. When Shaw made such purchases that were not legitimate business expenses, the Hogans would deduct the funds from his paycheck to cover the charges. Shaw also asked the Hogans to pay some of his bills directly out of his pay. Shaw would not bring home any money from his job at Transport Care some pay periods because of the deductions from his check.

In order to earn extra money, Shaw began seeking additional employment in early 2010. When Shaw told Robert Hogan about his intention to work a second job, Robert became upset. Then, in May 2010, Robert fired Shaw. According to Shaw, Robert terminated him because of unauthorized credit card purchases and because Shaw was going to start working for a competitor, Guardian. Shaw began working for Guardian in June 2010.

In August or September 2010, Robert filed a complaint with the Texas Department of State Health Services (the Department). The complaint stated that Shaw had used the company credit card for personal items and that he had attempted to transport a patient from Red River Hospital without authorization from Transport Care. In October 2010, Guardian asked Shaw to resign in lieu of

termination. Shaw contends Guardian asked him to resign because of the complaint Robert filed with the Department.

Four days after resigning from Guardian, Shaw began working as a paramedic for North Star EMS. On November 15, 2010, Shaw's subordinate at North Star, Eddie Jackson, received two phone calls from Robert. North Star recorded the calls. During the course of the first call, Robert learned that Shaw worked as the company's operations manager. Robert told Jackson that he felt sorry for him and that North Star should conduct a background check on Shaw. When Jackson asked Robert for his name, Robert said he was "Bob Harbin." Immediately after the first phone call, Robert called back and confessed that he was not really Harbin but rather that he had worked with Shaw at Cooke County EMS Association and that Harbin had been their boss. In fact, Robert had never worked for Harbin at Cooke County EMS.

After the phone conversations between Jackson and Robert, North Star asked Shaw to sign a noncompete agreement. Shaw refused and resigned. Shaw was unsuccessful in his job search in the paramedic field after leaving North Star. He believed it was because of the statements Robert had made to Jackson and the complaint Robert had filed with the Department.

Shaw sued Transport Care and the Hogans. A jury found that Robert had intentionally interfered with Shaw's employment with North Star, had intentionally interfered with Shaw's future employment, and had slandered Shaw in his conversation with Eddie Jackson. The trial court awarded Shaw $50,000 for the

3

intentional interference with his job with North Star, $50,000 for the intentional interference with his prospective employment, and $50,000 in damages for lost earnings caused by Robert's slander. The Hogans and Transport Care subsequently filed this appeal.

## Standard of Review

All three of the appellants' issues on appeal challenge the legal and factual sufficiency of the evidence supporting the jury's findings.

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

**Discussion**

## I. Sufficiency of the Evidence for Defamation

In their first issue, the appellants argue that there is insufficient evidence to uphold the trial court's damages award for slander. Defamation is the invasion of a person's interest in his or her reputation and good name, and it includes both libel and slander. *Tomlinson v. McComas*, No. 02-11-00175-CV, 2011 WL 5607604, at *4 (Tex. App.—Fort Worth Nov. 17, 2011, pet. denied) (mem. op.). Slander is oral defamation. *Bayoud v. Sigler*, 555 S.W.2d 913, 915 (Tex. App.—Waco 1977, writ dism'd). A statement that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him is defamatory. *Hardwick v. Houston Lighting & Power Co.*, 881 S.W.2d 195, 197 (Tex. App.—Corpus Christi 1994, writ dism'd w.o.j.).

5

A statement must contain a verifiable fact to be defamatory. *Fort Worth Star-Telegram v. Street*, 61 S.W.3d 704, 709 (Tex. App.—Fort Worth 2001, pet denied). Opinions are not defamatory. *Vice v. Kasprzak*, 318 S.W.3d 1, 22 (Tex. App.—Houston [1st Dist.] 2009, pet denied). Whether a statement is a fact or an opinion is a question of law for the court. *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989).

The jury found three of Robert's statements defamatory. For two of the statements, made to the manager of an Exxon station, the jury awarded no damages. The appellants make no argument on appeal regarding those statements, and we will not address them.

Robert made the third allegedly defamatory statement during a phone call with Shaw's subordinate, Eddie Jackson, at North Star. When Jackson told Robert that Shaw was North Star's operations manager, Robert said,

> I would suggest strongly that you check into his background, whoever—and—and check with people that he's worked for in the last six years. . . . Because if he's your new operations manager, I—I—I feel sorry for you. . . . I would tell his boss, whoever it is, to do a thorough background check. . . . There's a lot that y'all don't know, a whole lot. But because of HIPAA, everything is constrained. . . . And I—you know, for the betterment of EMS and your company, I would do a real thorough check, check here, real thorough.

As stated above, an actionable defamatory statement must contain a verifiable fact. *Fort Worth Star-Telegram*, 61 S.W.3d at 709. Nothing in Robert's statement is a fact that is capable of being verified. Robert's sentiment that he "fel[t] sorry" for North Star is nothing more than Robert's opinion. *See Brown v.*

6

*Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 383 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that the statement that the plaintiff was a "walking E & O" was not an assertion of fact because it only expressed an opinion that the plaintiff was likely to perform his work in a manner that would require his employer's errors and omissions insurer to provide coverage when he made a mistake).

His suggestion that North Star perform a background check is also not a verifiable fact. Robert claims, "There's a lot that y'all don't know," but he does not state enough detail that would give rise to an actionable statement of fact. *See Associated Press v. Cook*, 17 S.W.3d 447, 454 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (holding that statements that the plaintiff was "a blight on law enforcement" and that his departure from law enforcement "was a culmination of a lot of things, things too numerous to discuss" were defendant's assertions of opinion and not statements of fact). Shaw never explains what information would be uncovered through the background check that Robert suggested North Star perform. At trial and on appeal, Shaw references the complaint that Robert made to the Department, accusing Shaw of making unapproved charges on Transport Care's credit card and of inappropriately getting power of attorney over a patient. But Shaw did not submit the statements that Robert made to the Department to the jury and there is no finding that such statements were defamatory. If North Star conducted a background check and found these complaints, any statement of Robert's that the complaints existed certainly would

7

not be false. Shaw argues that Robert's statement, "There's a lot that y'all don't know, a whole lot. But because of HIPAA, everything is constrained," implies undisclosed facts, thereby making Robert's opinion actionable. *See Bentley v. Bunton,* 94 S.W.3d 561, 584 (Tex. 2002). However, in the context of Robert's statements, Robert implied that if North Star did a background check on Shaw, it would discover the information that Robert was "constrained" to reveal. The facts underlying Robert's opinion were therefore available for North Star to consider and thus this case does not involve "an implication of undisclosed facts." *See Rehak Creative Servs., Inc. v. Witt*, No. 14-12-00658-CV, 2013 WL 2211654, at *13 (Tex. App.—Houston [14th Dist.] May 21, 2013, no. pet. h.) (holding that there was no implication of undisclosed facts when the documents that the defendants claimed to rely upon for their opinion were linked to the website where the allegedly defaming statements were made).[2]

---

[2]Shaw cites *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17–19, 110 S. Ct. 2695, 2705–06 (1990), and *El Paso Times, Inc. v. Kerr*, 706 S.W.2d 797, 799 (Tex App.—El Paso 1986, writ ref'd n.r.e.), cert. denied, 480 U.S. 932 (1987), in support of his argument that there is no distinction between opinion and fact in defamation. We first note that *Milkovich* and *El Paso Times* both involve media defendants, which involve questions of freedom of speech particular to broadcast media. *See, e.g.*, *Channel 4, KGBT v. Briggs*, 759 S.W.2d 939, 944 (Tex. 1988) (noting burdens on media defendants to defend their constitutionally guaranteed rights "causes an erosion of freedom of expression and has a chilling effect on the media's role as a forum for the dissemination of ideas and information"). Secondly, the supreme court affirmed in *Milkovich* that "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." 497 U.S. at 20, 110 S. Ct. at 2706; *see El Paso Times*, 706 S.W.2d at 798 ("All assertions of opinion are protected by the First Amendment of the United States Constitution.").

As a matter of law, Robert's statements to Jackson do not rise to the level of actionable defamation. Because those statements were the only ones for which the jury awarded damages, the evidence is legally insufficient to support the award of damages. The trial court therefore erred by awarding damages to Shaw on his defamation claim, and we sustain the appellants' first issue.

## II. Intentional Interference with Past and Future Employment

The appellants argue in their second and third issues that there is insufficient evidence to support the trial court's judgment that they intentionally interfered with Shaw's past and future employment. To establish liability for interference with a prospective contractual or business relation, Shaw must have proved that he was harmed by conduct on the part of the appellants that was either independently tortious or unlawful. *See Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 713 (Tex. 2001). Conduct that would violate some other recognized tort or duty is "independently tortious." *Id.* A claim of tortious interference with existing employment also requires evidence of willful or intentional interference. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

The only independent tortious acts to which Shaw points are Robert's recorded statements.[3] But as we have held, those statements were not

---

[3]On appeal, Shaw arguably also points to the complaints filed by Robert to the Department as other intentional acts committed by Robert meant to interfere with Shaw's employment. There was, however, no finding that the complaints were defamatory or otherwise tortious or unlawful. *See Wal–Mart Stores*, 52

defamatory as a matter of law. Shaw therefore did not prove an independently tortious act by the Hogans or by Transport Care that would support his claim of intentional interference. The trial court erred by granting judgment in Shaw's favor on his intentional interference with past and future employment causes of action. *See Tabor, Chhabra & Gibbs, P.A. v. Med. Legal Evaluations, Inc.*, 237 S.W.3d 762, 776 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that because plaintiff's allegations of defamation were insufficient, his allegations of intentional interference with past and prospective employment were also insufficient when the defamation claim formed the basis of his claims of intentional interference). Accordingly, we sustain the appellants' second and third issues.

## Conclusion

Having sustained the appellants' three issues, we reverse the trial court's judgment in favor of Shaw. When we sustain a legal sufficiency issue, it is our duty to render judgment for the appellants because that is the judgment the trial court should have rendered. *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex. 1986); *see* Tex. R. App. P. 43.3. We therefore render judgment that Shaw take nothing on his claims against Transport Care and the Hogans.

---

S.W.3d at 713 (requiring the interfering act to be independently tortious or unlawful). The complaints filed with the Department could not therefore support Shaw's intentional interference claims.

10

                                        LEE GABRIEL
                                        JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DELIVERED:  September 26, 2013