### GAYLORD BROADCASTING COMPANY, L.P. and Angela Hale, Appellants,

v.

### Robert W. FRANCIS, Appellee.

No. 05–99–00481–CV.

Court of Appeals of Texas, Dallas.

Nov. 24, 1999.

Marshall M. Searcy, Roger C. Diseker, Kelly, Hart & Hallman, P.C., Fort Worth, for Appellant.

Joe Chumlea, Bragg Chumlea McQuality & Smithers, Dallas, for Appellee.

Before Justices KINKEADE, WHITTINGTON, and JAMES.

## OPINION

TOM JAMES, Justice.

Robert W. Francis, a criminal district court judge in Dallas County, sued appellants Gaylord Broadcasting Company, L.P., and Angela Hale for defamation arising out of a series of news stories broadcast on KTVT Channel 11 regarding the work habits of Dallas County criminal district court judges. Gaylord and Hale bring an interlocutory appeal from the trial court's denial of their motion for summary judgment. We affirm.

## BACKGROUND

Gaylord owns television station KTVT. Hale is employed as a reporter at KTVT. Hale investigated and prepared an investigative report on the work habits of Dallas County's criminal district court judges which aired November 9—11, 1997. As the basis for her report, Hale obtained the parking records of the judges for portions of the months of November and December 1996 and February and March 1997. Hale used the parking records to construct a database of times when the judges used their electronic key-cards to enter and exit the judicial parking facility. Based on her review of the parking records, she determined the work habits of certain judges to be suspect. She and a photo journalist then secretly observed these judges as they left from home in the morning and returned in the afternoon or evening, when they arrived at the courthouse and departed during the day, and as they went to other places during regular business hours. She also interviewed some of the judges' colleagues as well as attorneys who appear before these judges. Additionally, Hale sought to interview the judges; Francis, however, declined to talk to her. Upon learning that the parking records had been obtained by Hale, the criminal district court judges, acting en banc, ordered their return from the county commissioner who had provided the records to Hale.

Francis complains that the following statements aired during the broadcasts are defamatory:

1. "[P]hoto journalist Dan Peterson and I examined almost 9000 entry and exit records that record the time each Judge spends at the Crowley Courthouse. The results may anger you, after all it's your money."

2. "We only counted days judges were actually at work and drove their own car ... and, to be fair we threw out all holidays, or days surrounding holidays and only counted days there was a clear entry and exit."

3. "The key card entry records document the time judges enter or exit the Crowley courthouse."

4. "He is not alone. Judge Bobby Francis is new to the bench this year. He took retiring Judge Mark Tolle's place and the number of backlogged cases has been growing ever since."

5. "Records suggest Francis leaves the courthouse early 67% of the time and works only a half day 50% of the time. An average work week appears to be about 27 hours."

6. "We used conservative estimates on the data, always giving the judges the benefit of the doubt. We used only the days where there was a clear entry and exit, and threw out all holidays or days surrounding holidays."

## STANDARD OF REVIEW

We have jurisdiction to hear an interlocutory appeal from the denial of a summary

judgment motion when a media defendant asserts as a defense the free speech or free press clauses of the United States or Texas constitutions. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(6) (Vernon Supp. 1999). We apply the same de novo standard of review on appeal whether an order grants or denies a motion for summary judgment. *See American Broad. Cos. v. Gill,* 6 S.W.3d 19, 27–28 (Tex.App.-San Antonio, 1999, pet. filed); *San Antonio Express News v. Dracos,* 922 S.W.2d 242, 247 (Tex.App.-San Antonio 1996, no writ). We will therefore reverse an order denying a traditional motion for summary judgment under rule 166a(c) and render judgment in the movant's favor only if the summary judgment evidence establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law on a ground set forth in the motion. *See* TEX.R. CIV. P. 166a(c). In deciding whether the summary judgment evidence raises a genuine issue of material fact, we view as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve all doubts in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985).

## DEFAMATION

In five issues, appellants contend the trial court erred in failing to grant summary judgment because as a matter of law the broadcasts are not defamatory, the statements in the broadcast are opinions which are not capable of defamatory meaning, the statements were not made with malice, the statements are substantially true, and the statements are privileged. We will address each issue in turn.

■ Whether a statement is reasonably capable of a defamatory meaning is a threshold question of law to be determined by the court. *Musser v. Smith Protective Servs., Inc.,* 723 S.W.2d 653, 654 (Tex. 1987). A statement is defamatory if it "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997). The court construes the statement "as a whole, in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement." *Musser,* 723 S.W.2d at 655. If the court determines the language is ambiguous or of doubtful import, the question of the statement's meaning and effect on the ordinary listener should go to the jury. *Id.*

■ Appellants contend the statements are not defamatory as a matter of law because when taken as a whole they simply state that an elected judge is not working very hard, which is criticism of an elected official protected by the First Amendment. The statements at issue, however, went beyond stating simply that Francis does not work very hard; instead, using subjective criteria resulting in seemingly scientific statistics, appellants concluded Francis was "hardly working." The statistics reported for Francis so deviated from the proposed standard of "hard working" offered in the storyline that they could tend to subject him to public hatred, contempt, and ridicule, and impeach his honesty, integrity, virtue, and reputation. The summary judgment evidence offered reflects that in fact Francis was ridiculed by persons who saw the broadcasts. We conclude the complained-of statements, when viewed as a whole in light of surrounding circumstances, *could* be perceived by a person of ordinary intelligence as defamatory, and that such question should be determined by the factfinder. *See id.* at 654. We overrule appellants' first issue.

■ In their second issue, appellants contend the statements are not defamatory because they are merely opinions. Appellants assert that because their statistical analysis began with the phrase "records suggest," these statements were protected

statements of opinion rather than statements of fact. Appellants rely on *Carr v. Brasher* and similar cases which hold that a statement of opinion is not an assertion of fact and thus not actionable. *See Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex.1989). This portion of *Carr*, however, relied on certain *dictum* in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), which was subsequently disavowed in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).

In *Milkovich*, the Court stated it never intended its opinion in *Gertz* to "create a wholesale defamation exemption for anything which might be labeled 'opinion.'" *Milkovich*, 497 U.S. at 18, 110 S.Ct. 2695. The Court recognized that nominal expressions of opinion may often imply an assertion of objective fact. *Id.* at 18–19, 110 S.Ct. 2695 (noting that the statement "in my opinion Jones is a liar" is as damaging as the statement "Jones is a liar" because it implies a false assertion of fact). *Milkovich* focuses on the harmful nature of the statements rather than an "artificial dichotomy between 'opinion' and fact." *See id.* at 19, 110 S.Ct. 2695. Therefore, the caveat "records suggest" does not insulate appellants' statements as protected opinion. The question is whether a reasonable factfinder could conclude that the statements in the broadcast imply as assertions of fact that Francis leaves the courthouse early 67% of the time, works only a half day 50% of the time, and appears to work an average work week of about 27 hours. *See id.* at 21, 110 S.Ct. 2695. In our opinion a reasonable factfinder could so conclude. We overrule appellants' second issue.

In their third issue, appellants assert that the statements are not actionable because they were not made with actual malice. It is undisputed that Francis, an elected public official, is a public figure in the present context. An actual malice standard applies to public figures. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1358, 143 L.Ed.2d 519 (1999). A statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex.1995). Therefore, to recover at trial Francis must prove that any false, defamatory statements were broadcast by appellants with actual knowledge of their falsity or in reckless disregard of the truth.

"[T]he actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). Rather, to establish "actual malice" in the defamation context, the plaintiff must produce "clear and convincing evidence that the defendant acted with a knowledge of falsity or with a 'high degree of awareness of ... probable falsity.'" *Id.* at 688, 109 S.Ct. 2678 (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)). At a minimum, therefore, a defamation plaintiff must prove the defendant "entertained serious doubts as to the truth of his publication." *Id.* at 667, 109 S.Ct. 2678 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)).

"[A] plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence." *Id.* at 668, 109 S.Ct. 2678. "In a case ... involving the reporting of a third party's allegations, 'recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.'" *Id.* at 688, 109 S.Ct. 2678 (quoting *St. Amant*, 390 U.S. at 732, 88 S.Ct. 1323). But evidence establishing a "[d]ifference of opinion as to the truth of a matter ... does not alone constitute clear and convincing evidence that the defendant acted with a knowledge of falsity or with a

'high degree of awareness of ... probable falsity.' " *Id.* at 681, 109 S.Ct. 2678 (quoting *Garrison,* 379 U.S. at 74, 85 S.Ct. 209); *see also HBO v. Harrison,* 983 S.W.2d 31, 42 (Tex.App.-Houston [14th Dist.] 1998, no pet.) ("a difference of opinion among the people involved ... does not prove that anyone involved in the production of the film subjectively believed the statements in the film were untrue"). Similarly insufficient is evidence the defendant made an "editorial choice to exclude certain information" or simply failed to investigate or verify information; rather, "[t]here must be evidence at least that the defendants purposefully avoided the truth." *HBO,* 983 S.W.2d at 42.

 As movants, appellants have the burden of proving absence of malice. *Jackson v. Cheatwood,* 445 S.W.2d 513, 514 (Tex.1969); *Hanssen v. Our Redeemer Lutheran Church,* 938 S.W.2d 85, 93 (Tex. App.-Dallas 1996, writ denied); *Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 335 (Tex.App.-Dallas 1986, no writ). Appellants contend they established the lack of any malice with Hale's affidavit and argue Francis failed to raise a fact issue on this element. Francis, however, contends he offered circumstantial evidence from which the jury could infer appellants acted in reckless disregard for the truth. Francis therefore contends an issue of fact exists as to whether appellants acted with actual malice. We agree with Francis that issues of fact exist as to whether appellants acted with malice.

The summary judgment evidence suggests that some of the evidence used in the broadcast may have been fabricated or improperly extrapolated from other evidence. The summary judgment evidence shows that Hale admitted she did not know how to distinguish entry and exit codes for the garage. On several days that were included in her report, either an entrance or an exit time was missing, but she did not know whether the missing data was for an entry or an exit. Her testimony shows she made up some of the times

used in her database for Francis because the time entries were missing. She also included data from days when she assumed Francis rode with his wife, so she used arrival times for his wife's car. Finally, the evidence shows that she included days in December before Francis had actually begun work at the court.

We conclude that Francis's summary judgment evidence creates a fact issue as to whether Hale acted with knowledge of the falsity of her statements or with a "high degree of awareness of ... probable falsity." *See Harte–Hanks Communications,* 491 U.S. at 666, 109 S.Ct. 2678. This case is therefore distinguishable from those in which the plaintiff merely demonstrated that the media defendant was negligent. *Cf. Beck v. Lone Star Broad., Co.,* 970 S.W.2d 610, 618 (Tex.App.-Tyler 1998, pet. denied); *Morris v. Dallas Morning News,* 934 S.W.2d 410, 420 (Tex.App.-Waco 1996, writ denied). Accordingly, we overrule appellants' third issue.

 In their fourth issue, appellants contend the broadcast was not defamatory because it was substantially true. Although appellants correctly argue that for Francis to recover the challenged statements must be false, we have already determined in connection with the foregoing issue that evidence exists from which a jury could find that some of the statements made were false. Appellants nevertheless contend that under the standard in *McIlvain v. Jacobs,* 794 S.W.2d 14 (Tex.1990), recovery is barred. *McIlvain* holds that a statement is substantially true if it is no more damaging than a true statement would have been. *Id.* at 16. Appellants' argument, however, again rests on the characterization of the broadcast as stating simply Francis does not work very hard. As discussed above, the broadcast's indictment of Francis went beyond appellants' characterization. The broadcast accused appellant of being seriously deficient in his work habits. A county commissioner interviewed for the report stated that judges who consistently do not work a full day "in

effect are stealing from the taxpayer." Francis offered summary judgment evidence that indicates his work habits are considerably better than that aired by appellants, being close to that of a judge praised by appellants as hard working. Accordingly, we conclude a fact issue exists as to whether the broadcast was substantially true.

Although appellants seem to argue that under *McIlvain* we can determine as a matter of law whether allegedly defamatory statements are substantially true, we believe this is a misreading of *McIlvain*. *McIlvain* states that falsity presents a question of law "[i]f the underlying facts as to the gist of the defamatory charge are undisputed." *Id.* In *McIlvain* the facts were undisputed. *See id.* Here they are not. Francis disputes whether he leaves the courthouse early 67% of the time, works only a half day 50% of the time, and works an average of about 27 hours a week; and he contends the truth is substantially different from that alleged by appellants in their broadcasts. We therefore conclude it is for a jury to determine whether the "gist" of the broadcast at issue was false. We overrule appellants' fourth issue.

■ Finally, appellants contend the broadcast is privileged by statute as "reasonable and fair comment on or criticism of an official act of a public official or other matter of public concern published for general information." *See* Tex. Civ. Prac. & Rem.Code Ann. § 73.002(b)(2) (Vernon 1997). In this connection, appellants emphasize that the issue of the judges' parking records arose in connection with the funding of a new "drug court" for Dallas County and the concerns one county commissioner had with whether the funding was justified in light of the work habits of the criminal district court judges.

We do not question that the subject matter was of public concern. The issue, however, is whether appellants' comment and criticism was "reasonable and fair." As we have discussed, Francis disputes the accuracy of the reports, and he contends that the records relied on for the report were erroneously interpreted, poorly utilized, and incomplete. Further, Francis's summary judgment evidence raises a fact issue as to whether appellants fabricated a substantial part of the database used in the report and misrepresented this fact in the broadcast. Therefore, we cannot conclude appellants' comment and criticism was "reasonable and fair" as a matter of law. Accordingly, we overrule appellants' fifth issue.

Having overruled each of appellants' issues, we affirm the order of the trial court denying appellants' motion for summary judgment.

## ATTORNEY'S FEES

■ In his brief, Francis contends that section 51.015 of the Texas Civil Practice and Remedies Code mandates that, in this instance, we must order appellants to pay his costs and attorney's fees on appeal if we affirm the trial court's judgment. We agree. Section 51.015 provides:

> In the case of an appeal brought pursuant to Section 51.014(6), if the order appealed from is affirmed, the court of appeals shall order the appellant to pay all costs and reasonable attorney fees of the appeal; otherwise, each party shall be liable for and taxed its own costs of the appeal.

Tex. Civ. Prac. & Rem.Code Ann. § 51.015 (Vernon 1997). Although we are aware of no decision applying this provision, its terms are mandatory. Thus, if a media defendant loses an interlocutory appeal, the plaintiff's court costs and attorney's fees for the appeal must be paid by the media defendant. *See KTRK Television, Inc. v. Fowkes*, 981 S.W.2d 779, 785 (Tex. App.-Hous. [1st Dist.] 1998, pet. denied).

We therefore order appellants to pay all costs and reasonable attorney's fees of the

appeal in an amount to be determined by the trial court.