## GAYLORD BROADCASTING COMPANY and Angela Hale, Petitioners,

v.

## Robert W. FRANCIS, Respondent.

### No. 00–0149.

Supreme Court of Texas.

June 8, 2000.

Rehearing Overruled Aug. 24, 2000.

Marshall M. Searcy, Jr., Roger Clyfton Diseker, Kelly Hart & Hallman, Fort Worth, for Petitioners.

Joseph G. Chumlea, Bragg Chumlea McQuality & Smithers, Dallas, for Respondent.

Justice HECHT, dissenting from the denial of the petition for review.

The petition for review in this defamation case appears to raise significant issues important to Texas jurisprudence that should be presented on full briefing and

---

**7.** 999 S.W.2d at 34–35.

argument. Because the Court summarily denies the petition, I respectfully dissent.

The facts—which, absent a record and full briefing, I must take from the abbreviated statements in the petition, response, and reply, and from the court of appeals' opinion [1]—appear to be as follows. Television station KTVT, channel 11 in the Dallas/Fort Worth area, broadcast a three-part investigative news feature in November 1997 entitled *Judgment Day*, criticizing the work habits of several criminal court judges in Dallas County. Reporter Angela Hale did most of the work on the feature and presented it on the air. The broadcast focused on an analysis of computer records showing when the judges entered and exited the secure parking garage at the courthouse over a period of several weeks. It appears that KTVT obtained the records from a Dallas County Commissioner and that not long afterward the criminal district court judges ordered that the records not be disseminated. The controversy over disclosure of these records stirred some public interest in the Dallas/Fort Worth area, resulted in at least one other controversy that has reached this Court,[2] and was one factor that led to adoption of Rule 12 of the Rules of Judicial Administration that governs public access to judicial records.

Hale attempted to calculate from the computer records the amount of time that various judges were present at the courthouse during ordinary business hours. When the records were unclear, Hale made various assumptions. It now appears that the calculations she used were significantly flawed and that the percentages given in the broadcast were overstated. However, the parking garage records were not the sole support for the broadcast. Hale also stated that she and others had watched judges coming and going to see where they were during the workday. The broadcast showed video clips of judges engaged in various personal activities during regular business hours. Hale also stated that she had examined judges' pending caseloads to see whether their work habits were reflected in the size of their dockets, that she had talked with judges and lawyers about which judges worked hard and which did not, and that she offered to talk with the judges portrayed in the broadcast.

One of the judges criticized in the broadcast, the Hon. Robert W. Francis, sued KTVT's owner, Gaylord Broadcasting Co., and Hale for defamation. Defendants moved for summary judgment on the grounds that the statements made in the broadcast were not defamatory, were protected opinion, were not made with actual malice, were substantially true, and were privileged. In response, Francis averred that he routinely worked eight-hour days, and that the parking records, correctly analyzed, demonstrated as much. (Again, these assertions are taken from Francis's response in this Court because we do not have the record or full briefing.) The district court denied the motion, and defendants took an interlocutory appeal.[3] The court of appeals affirmed.[4]

Although the court of appeals recognized that the broadcast was based on information other than the parking records,[5] its analysis of several of the issues focused exclusively on those records. For example, in considering whether defendants acted with actual malice, the court confined its discussion to possible errors in the analysis of the parking records.[6] Assuming that those errors would raise a factual issue about whether defendants

---

1. 7 S.W.3d 279.

2. *In re Gaylord Broadcasting Co.*, 22 S.W.3d 848, 2000 WL 566882 (Tex.2000) (Hecht, J., dissenting from the denial of the pet. for review).

3. TEX. CIV. PRAC. & REM.CODE § 51.014(a)(6).

4. 7 S.W.3d 279.

5. *Id.* at 282.

6. *Id.* at 284–285.

acted with actual malice if the records had been the sole basis for the broadcast, the issue remains whether the errors raised an actual malice issue when the records were only one of several bases for the broadcast.[7] The defendants could have broadcast a story about the work habits of judges based on nothing other than interviews of judges and lawyers. After all, virtually every judicial evaluation poll inquires whether a judge is hard-working, and the results of those polls are published by bar associations and the media without defamation suits being filed. The defendants here not only used the results of such interviews in their broadcast, they also watched the judges' comings and goings on workdays to see what they were about and examined the judges' caseloads. Further, Hale offered to interview the judges featured in the broadcast to hear their side of the matter. There is no indication that Hale purposefully avoided the truth about the judges' working hours.

"Actual malice" in a defamation case means that a defendant acted with knowledge that a statement was false or with reckless disregard of whether it was true or not.[8] The gist of defendants' statements here is that various judges, including Judge Francis, were hardly working. The court of appeals concluded that a fact issue exists whether defendants knew that that assertion was false, or whether they recklessly disregarded whether it was false, because there were errors in the parking records calculations. But the best those records showed, according to Francis himself, was that he worked 39–40 hours a week. He does not claim in his response here that his summary judgment evidence challenged the defendants' assertions that he was often not present at the courthouse during working hours, that lawyers and other judges told the defendants that he was not hard-working, or

that his higher caseload was not indicative of lax working habits. The court of appeals does not appear to have considered whether defendants either knew or did not care that their statements were false, given the other information available to them about the judges' actual whereabouts on various occasions, the comments of lawyers and even their colleagues, and the numbers of cases pending on their dockets.

The same deficit occurs in the court of appeals' analysis of whether the defendants' statements were substantially true, and whether they were a reasonable and fair comment on the conduct of public officials and a matter of public interest. Looking solely to the defendants' analysis of the parking records, one is easily troubled by the inaccuracies, although even so it is not clear that the defendants' statements were plainly false. But when one considers the other information the defendants had, most of which the plaintiff does not challenge, any indications that the defendants acted with actual malice seems to evaporate.

Assume that Hale actually knew that her analysis of the parking records was false. If a reporter publishes as fact a statement supported by substantial evidence she believes is true and one piece of evidence that she knows is false, does she act with actual malice? Put another way, had Hale known from the parking records that Francis routinely worked a forty-hour week but deliberately misconstrued those records, would she have acted with actual malice in broadcasting a report that Francis was not hard-working when she had evidence that he was outside the courthouse on workdays, that lawyers and other judges did not think he was hard-working, and that his court had a higher number of pending cases than other courts? Did Hale's misuse of the parking records, as-

**7.** *See Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 685, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989).

**8.** *New York Times v. Sullivan,* 376 U.S. 254, 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964);

*Huckabee v. Time Warner Entertainment Co.,* 19 S.W.3d 413 (Tex.2000).

suming it occurred, make her and KTVT liable for statements for which there was other supporting evidence?

These issues are of substantial importance not only to the litigants in this case but to the public generally. They are related to issues raised in a case pending before us, *Turner v. KTRK Television.*[9] They are among the few issues over which the Legislature has expressly given this Court jurisdiction in interlocutory appeals,[10] which is another indication of their importance to the law. In summarily dismissing them, the Court invites the charge that defamation suits against broadcasters critical of judges are not given the same scrutiny as defamation suits against broadcasters critical of other public officials. Whether media criticism of public officials is protected does not depend on who is being criticized. Judges are not entitled to special treatment under defamation law. I would grant the petition for review, obtain the record and request full briefing, and give plenary consideration to petitioners' arguments. From the Court's summary denial of the petition for review, I dissent.

**9.** *Dolcefino v. Turner,* 987 S.W.2d 100 (Tex. App.—Houston [14th Dist.] 1998), *pet. for review granted sub nom. Turner v. KTRK Television,* No. 99–0419 (Tex., granted 1/27/00).

