NUMBER 13-02-544-CV




COURT OF APPEALS




 THIRTEENTH DISTRICT OF TEXAS




 CORPUS CHRIST-EDINBURG 


 



FREEDOM NEWSPAPERS OF TEXAS, ET AL., Appellant,



v.




CONRADO M. CANTU , Appellee.

 



On appeal from the 138TH District Court 


of Cameron County, Texas.


 



OPINION





 Before Chief Justice Valdez and Justices Hinojosa and Rodriguez

Opinion by Chief Justice Rogelio Valdez

 Conrado M. Cantu, currently the Sheriff of Cameron County, brought suit against Freedom Newspapers of Texas d/b/a/
the Brownsville Herald, George Cox, the editor of the Brownsville Herald, and Brad Pierce, a reporter for the Brownsville
Herald, based on the paper's coverage of comments made by Cantu during a political debate with his opponent, Terry
Vinson, in the race for Sheriff. These defendants moved for summary judgment, the trial court denied their motions, and
this appeal ensued. (1) We affirm.

Jurisdiction


 The civil practice and remedies code permits appeal of an interlocutory order denying a motion for summary judgment
based on a claim against, or a defense asserted by, a member of the media arising under the First Amendment of the United
States Constitution or article 1, section 8 of the Texas Constitution. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(6)
(Vernon Supp. 2003).

 

Background


 The dispute in the instant case centers on the defendants' coverage of a political debate between Cantu and his opponent,
Terry Vinson, in the electoral race for Sheriff of Cameron County. The debate was covered by reporter Brad Pierce, who
attended the debate but did not record the proceedings. One of Cantu's supporters recorded the debate, and a transcript of
the recording shows that the candidates made the following comments, in pertinent part:

 Cantu: [I]t is not easy to go out there and stand in a neighborhood and tell everybody what are your needs, what are your
problems. I can do that because I am bi-cultural, I know the people, I know everybody that lives in my precinct and that is
why I have been honored by everybody because of my dedication.



 * * *



 Cantu: Mr. Vinson is a nice man, but he is an instructor, he is not a sheriff. You have to have the right character to be a
sheriff and you have to delegate authority and it does not stop there. You have to be bi-cultural to understand what is going
on in our neighborhoods, where there is a lot of burglaries, how are you going to relate to these people - in Spanish - and
make them understand that they need to stop or we are going to put a stop to it in their neighborhoods. How is it going to
happen. You have to be able to understand, you have to have grown up here to understand that.



 * * *



 Vinson: Well, when he brings up the bi-cultural, well he is forgetting we have orientals, we have Filipinos, we have
Chinese, we got Japanese, we got Chinese, we've got . . . Israelis, we have . . . what is he going to talk to them, you are
going to find somebody to do the communicating for you. . . . What can we do as a team itself, that's what we need to do. 
Bi-cultural is a barrier that is there because people put it there, it shouldn't exist. I don't believe in it. I believe everybody is
the same, everybody is treated the same and everybody should be shown the respect 



 * * *



 Vinson: I am not going to tolerate the compadreism, I am sorry, I am not from this culture, I apologize to that [sic], but I
can guarantee you one thing, I will treat everybody the same. . . .



The next day, October 5, 2000, the newspaper covered the debate with an article appearing on the front page of the paper,
entitled "Cantu: No Anglo can be sheriff of Cameron County," and subtitled "Election 2000: Dem candidate stresses
Hispanic heritage at debate." The text of the article began:

 No Anglo could ever be sheriff of Cameron County, Conrado Cantu said Wednesday during a debate with his opponent
Terry Vinson in the race for the county's top law enforcement office.



 "How are you going to relate to these people" Cantu asked Vinson, stressing that he's up for the job because he's Hispanic
and knows the residents.



 Cantu repeatedly said he's the better candidate because he's bi-cultural.



 "Bi-cultural is a barrier that's there because people put it there," Vinson replied. "We have a large culture," but "I believe
everyone is the same."



The article continued, discussing other issues raised during the debate, including investigations of criminal conduct
regarding Cantu and the candidates' relative qualifications for the job. The day the article was published, Cox questioned
Pierce "to ask him about the story and whether we felt we've been fair about the story and whether we needed to do any -
any subsequent reporting."

 Later that same day, Cantu approached the editor of the paper, George Cox, and complained that the paper's coverage was
incorrect. He told Cox that he never used the term "Anglo," and he found it offensive. He offered Cox a copy of an
audiotape made of the debate. Cox refused to listen to the tape of the debate, because he "believed what he was telling
me," and referred Cantu to Pierce. Cantu then spoke with Pierce, the reporter who covered the debate, and reiterated his
comments. 

 Cox subsequently again discussed the issue with Pierce, and Pierce told him that he believed that the article was a fair
representation of comments made during the debate. Cox felt that it "was appropriate to do a follow-up story to further
clarify comments," and "give Mr. Cantu an opportunity to have his say and his response."

 The following day, on October 6, 2000, the paper published a follow-up article on the front page. This article was entitled
"Sheriff candidate says racial issue wasn't the point," and is subtitled "Election: Cantu says Valley needs bi-cultural
candidates."

 Constable Conrado Cantu said he wants to set the record straight on comments that he made this week about his opponent
in the Cameron County sheriff's race not being the best man for the job because he's not Hispanic.



 Democrat Cantu said he never intended to suggest that race is an issue in his campaign, but that he has an advantage over
Republican Terry Vinson because he is from the Rio Grande Valley, speaks Spanish and understands the needs of the
majority of the public.



 "The people of the Rio Grande Valley live in a bi-cultural area," Cantu said, explaining that because he is "bi-cultural," he
is the best candidate to represent citizens as Cameron County's top law enforcement officer.



The paper continued the article on page twelve of the paper: 



 "I did not say that an Anglo could not be sheriff," he said, but rather that, by being bi-cultural, he has a better opportunity
to resolve conflicts and protect neighborhoods.



 However, Tracy Larimore, who said he was leaning toward voting for Cantu until Wednesday night, said, "Does that mean
that he can understand the Anglo race, and if that's so, how come Vinson can't understand the Hispanic race?



 "I clearly heard that the only person who could be sheriff is an Hispanic," Larimore said. "Frankly, I think he was caught
off guard. I think he meant what he said and now he's taking flack over it. He would have been far better not saying a word."



Following his election, Cantu brought suit against Freedom Newspapers of Texas d/b/a/ The Brownsville Herald, George
Cox, individually and as editor of the Brownsville Herald, and Brad Pierce, alleging causes of action including libel,
slander, defamation of character, damage to reputation, intentional infliction of emotional distress, and publications made
with actual malice. (2) 

 The defendants moved for summary judgment on grounds that (1) the challenged article is substantially accurate and true;
(2) the appellee, as a law enforcement officer and candidate for public office at the time the article was published, was a
public official or public figure who must prove actual malice, and actual malice cannot be established; (3) the challenged
article is protected by the common law privilege for substantially accurate news reports of political campaign activities; (4)
the appellee did not sustain any damages to his reputation, and therefore, is barred from recovering any damages; and (5)
absent proof of actionable defamation, appellee's other claims, which are derivative of his defamation claim, are moot and
must also fail. The trial court denied their motions, and this appeal ensued.

 Appellants raise six issues on appeal. Appellants argue that the trial court erred in denying the motions for summary
judgment claims because (1) the appellee failed to produce any evidence that the publication was not substantially true; (2)
the appellee failed to produce any evidence that the defendants acted with actual malice; (3) the appellee failed to counter
the uncontroverted evidence that defendants had no knowledge that the publication in question contained any false
statements and the defendants did not entertain any serious doubts as to the accuracy of the publication; (4) the media is
afforded a qualified privilege for the coverage of political campaigns; (5) the appellee failed to produce any competent
evidence of damages; and (6) each of appellee's non-defamation claims is derivative of the defamation claims, and
summary judgment should have been granted as to the defamation claims.

Standard of Review


 In a traditional summary judgment, the movant has the burden of showing that there is no genuine issue of material fact
and that it is entitled to judgment as a matter of law. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). In
deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true. Id. Every reasonable inference must be indulged in favor of the nonmovant, and any
doubts must be resolved in favor of the nonmovant. Id.

 Summary judgment is reviewed in public figure or public defamation cases under the same standard as other cases. See
Huckabee v. Timer Warner Entm't Co., 19 S.W.3d 413, 423 (Tex. 2000) (declining "to adopt the clear-and-convincing
standard at the summary judgment stage of a public-figure defamation case"); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.
1989). To have prevailed on their motions for summary judgment, the appellants must have disproved at lease one
essential element of the appellee's defamation claim. WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998). 

Analysis


 The threshold issue is whether the statements at issue are reasonably capable of defamatory meaning. Musser v. Smith
Protective Servs., Inc., 723 S.W.2d 653, 655 (Tex. 1987); Fort Worth Star-Telegram v. Street, 61 S.W.3d 704, 708 (Tex.
App.-Fort Worth 2001, pet. denied). Generally, a statement is defamatory if the words tend to injure a person's reputation. 
Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (Vernon 1997). Under the civil practice and remedies code, libel is a
defamation that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or
ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural
defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury. See id. 

 To maintain a defamation cause of action, the appellee must prove that the appellants (1) published a statement; (2) that
was defamatory regarding the appellee; (3) while acting with either actual malice, if the appellee was a public official or
public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. WFAA-TV, Inc.,
978 S.W.2d at 571; Carr, 776 S.W.2d at 569. 

 An allegedly defamatory publication should be construed as a whole in light of the surrounding circumstances based upon
how a person of ordinary intelligence would perceive it. Turner v. KTRK Television, Inc., 38 S.W.3d 103, 114 (Tex. 2000).
Whether a publication is capable of a defamatory meaning is initially a question for the court. See id.

Substantial Truth 


 In their first issue, appellants argue that the trial court erred in denying the motions for summary judgment claims because
the appellee failed to produce any evidence that the publication was not substantially true. Truth is an affirmative defense in
a defamation case, and the appellant has the burden of proof on this issue. UTV of San Antonio, Inc. v. Ardmore, Inc., 82
S.W.3d 609, 610 (Tex. App.-San Antonio 2002, no pet.); Garcia v. Allen, 28 S.W.3d 587, 593-94 (Tex. App.-Corpus
Christi 2000, pet. denied); see Tex. Civ. Prac. & Rem. Code Ann. § 73.005 (Vernon 1997) ("truth of the statement in the
publication on which an action for libel is based is a defense to the action"). 

 A media defendant can defeat a libel claim by proving the "substantial truth" of the statement. McIlvain v. Jacobs, 794
S.W.2d 14, 15 (Tex. 1990); Ardmore, 82 S.W.3d at 611. The test used in determining whether the report is substantially
true involves consideration of whether the alleged defamatory statement was more damaging to the plaintiff's reputation, in
the mind of the average listener, than a truthful statement would have been. McIlvain, 794 S.W.2d at 16; Ardmore, 82
S.W.3d at 611. This test requires that we look to the "gist" of the report. McIlvain, 794 S.W.2d at 16. If the underlying
facts as to the gist of the defamatory charge are undisputed, then we can disregard any variance with respect to items of
secondary importance and determine substantial truth as a matter of law. Id. The court must construe the report as a
whole in light of the surrounding circumstances, based upon how a person of ordinary intelligence would perceive the
entire statement. Ardmore, 82 S.W.3d at 612. 

 Even when the discrete facts within a publication are literally or substantially true, a publication may still be defamatory if
those facts are presented in such a way that they create a substantially false and defamatory impression by omitting material
facts or juxtaposing facts in a misleading way. Turner, 38 S.W.3d at 115.

 In reviewing the summary judgment evidence, we must indulge every reasonable inference in favor of appellee, and
resolve any doubts in his favor. Am. Tobacco Co., 951 S.W.2d at 425. Applying this standard, we conclude that appellants
have failed to establish the substantial truth of their coverage of the debate. According to the paper's second article on the
debate:

 Cantu was speaking at the South Texas for Good Government debates on Wednesday when he made what some observers
believe were discriminating remarks against Vinson. However, Chris Patterson, a youth basketball coach and Cantu
supporter, said he believes the constable was simply misunderstood.



 "I didn't hear it that way. I don't think it was a bad intent. He was talking about bi-cultural," Patterson said. Claiming that
he said no Anglo could ever be sheriff "wasn't a fair representation" of Cantu's comments, Patterson added, "and its
definitely not what he stands for." 



These comments, construed in favor of appellee, suffice to raise an issue of fact regarding whether the newspaper's
coverage of the debate was more damaging to the appellee's reputation, in the mind of the average listener, than a truthful
statement would have been. McIlvain, 794 S.W.2d at 16. Appellants have failed to conclusively establish their affirmative
defense that the publication was substantially truthful. We overrule appellants' first issue. 

Malice


 In their second and third issues, appellants argue that appellee failed to produce any evidence that the appellants acted with
actual malice, and the appellee failed to counter "uncontroverted" evidence that appellants had no knowledge that the
publication in question contained any false statements and did not entertain any serious doubts as to the accuracy of the
publication.

 In the instant case, it is undisputed that the appellee was a public figure, thus, the appellee must show that the appellants
acted with actual malice. McLemore, 978 S.W.2d at 571. Actual malice requires that appellee prove that the appellants
published a defamatory falsehood with actual malice, that is, with knowledge that it was false, or with reckless disregard of
whether it was false or not. Id. at 571, 573-74. Actual malice is a term of art, focusing on the defamation defendant's
attitude toward the truth of what it reported. Id. at 573. Reckless disregard is also a term of art, requiring the defamation
plaintiff to prove that the publisher entertained serious doubts as to the truth of his publication. Id. at 574. 

 A libel defendant can negate actual malice by presenting evidence that he or she did not publish the alleged defamatory
statement with actual knowledge of any falsity or with reckless disregard for the truth. Id. As part of their motion for
summary judgment, appellants included affidavits from R. Daniel Cavazos, the publisher of the Herald, Brad Pierce, and
George Cox. Each of the affidavits states that the affiant had no knowledge of any inaccuracies in the article prior to
publication, and the affiant had no reason to doubt the accuracy of any factual statements contained in the article.

 To disprove actual malice, a defendant may certainly testify about his own thinking and the reasons for his actions, and
may be able to negate actual malice conclusively. Bentley v. Bunton, 94 S.W.3d 561, 596 (Tex. 2002). But, his testimony
that he believed what he said is not conclusive, irrespective of all other evidence. Id. The evidence must be viewed in its
entirety. Id. The defendant's state of mind can, and indeed, must usually, be proved by circumstantial evidence. Id. 

 A lack of care or an injurious motive in making a statement is not alone proof of actual malice, but care and motive are
factors to be considered. An understandable misinterpretation of ambiguous facts does not show actual malice, but
inherently improbable assertions and statements made on information that is obviously dubious may show actual malice. A
failure to investigate fully is not evidence of actual malice; a purposeful avoidance of the truth is. Imagining that
something may be true is not the same as belief. 



Id.

 "Reckless disregard" is a subjective standard that focuses on the conduct and state of mind of the defendant. Id. at 591. It
requires more than a departure from reasonably prudent conduct; mere negligence is not enough. Id. There must be
evidence that the defendant in fact entertained serious doubts as to the truth of his publication, or evidence that the
defendant actually had a high degree of awareness of the probable falsity of the statements. Id. Thus, the failure to
investigate the facts before speaking as a reasonably prudent person would do is not, standing alone, evidence of a reckless
disregard for the truth, but evidence that a failure to investigate was contrary to a speaker's usual practice and motivated by
a desire to avoid the truth may demonstrate the reckless disregard required for actual malice. Id. 

 In the instant case, the appellee produced sufficient circumstantial evidence to defeat summary judgment regarding the
issue of malice. First, Pierce attended the debate and heard the candidate's comments, and knew that Cantu did not say that
"No Anglo can be sheriff of Cameron County." Second, Cantu testified without objection that several reporters told him
that the paper was biased against him. One reporter told Cantu that his supervisors got angry with him when he would not
"spite up" his coverage of Cantu. Third, the paper essentially republished the same article after Cantu complained about the
inaccuracy and furnished the paper with an audiotape of the debate. Fourth, Cox apparently entertained doubts about the
paper's coverage of the debate as evidenced by his questioning Pierce about the debate even before Cantu approached the
paper to complain. Finally, and significantly, an expert journalist, Alfred Lorenz, testified that the Herald showed a
consistent pattern of biased reporting, editing, and publishing regarding Cantu, and that the appellants showed a reckless
disregard for the truth. 

 Indulging every reasonable inference in favor of appellee, we conclude that the summary judgment evidence raises an issue
of material fact regarding whether appellees published the articles knowing that they were false or with reckless disregard
for their truth. Accordingly, we overrule appellants' second and third issues.

Common Law Privilege


 In their fourth issue, appellants argue that their report was protected by a qualified privilege protecting media reports of
political campaigns. According to appellants, "substantially accurate reports of statements made during political campaigns
are not actionable under a defamation theory absent proof of the defendant's express malice or ill will toward plaintiff." 
Appellants cite cases from other jurisdictions articulating this privilege. See generally Abram v. Odham, 89 So. 334 (Fla.
1956); State v. Greenville Pub. Co., 102 S.E. 318 (N.C. 1920); see also Pulvermann v. A.S. Abell Co., 131 F. Supp. 617 (D.
Md. 1955), aff'd, 228 F.2d 979 (4th Cir. 1955). In a footnote, appellants argue that Texas "appears" to have recognized this
privilege in Morin v. Houston Press Co., 103 S.W.2d 1087, 1090-91 (Tex. Civ. App.-El Paso 1937, no writ), and in the
civil practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann. § 73.002(2) (Vernon 1997) (describing as
privileged "reasonable and fair comment on or criticism of an official act of a public official or other matter of public
concern published for general information").

 Contrary to appellants' argument, neither Morin nor the civil practice and remedies code appear to have adopted this
privilege. In fact, the privilege as described runs contrary to the statutory and common law as established here in Texas and
described infra. See, e.g., Bentley, 94 S.W.3d at 596; Turner, 38 S.W.3d at 115;Huckabee, 19 S.W.3d at 423. We overrule
appellants' fourth issue. 

Damages


 In their fifth issue, appellants argue that appellee's defamation claim fails because he has failed to prove damage to his
reputation. In contrast, appellee asserts that there was summary judgment evidence showing that he suffered actual injury. 

 Damages which are generally recoverable for defamation include compensation for injuries to reputation or character,
mental anguish, and other wrongs, incapable of monetary valuation. See Mitre v. Brooks Fashion Stores, Inc., 840 S.W.2d
612, 620 (Tex. App.-Corpus Christi 1992, writ denied), overruled on other grounds, Cain v. Hearst Corp., 878 S.W.2d
577, 579 (Tex. 1994). In the instant case, Cantu offered testimony that he and his family suffered emotional anguish in the
form of shame, embarrassment, and humiliation. Cantu suffered physically in the form of high blood pressure. Cantu
testified that he was humiliated, and that he was frequently referred to as the "racist" sheriff. This testimony raises a
material fact issue regarding damages. We overrule appellants' fifth issue. 

 Having overruled appellants' first five issues, we need not reach appellants' remaining issue. See Tex. R. App. P. 47.1.







Conclusion


 Appellee presented sufficient summary judgment proof to raise material issues of fact with regard to his claims of
defamation. Accordingly, we affirm the trial court's order denying appellants' motions for summary judgment. 



 



 

 ROGELIO VALDEZ

 Chief Justice

 

Opinion delivered and filed

this 11th day of September, 2003.



























1. Two separate motions for summary judgment are at issue in this appeal: one filed by Freedom Newspapers of Texas
d/b/a The Brownsville Herald, and George Cox, individually and as editor of the Brownsville Herald, and a separate motion
filed by reporter Brad Pierce. These motions contained the same grounds for summary judgment, and were both denied in
one order issued by the trial court. All defendants have joined in this appeal.

2. A cause of action for libel accrues if the defendant publishes a false, defamatory statement of fact concerning the plaintiff
and if the defendant was at fault. Holly v. Cannady, 669 S.W.2d 381, 383 (Tex. App.-Dallas 1984, no writ). In contrast,
slander is a defamatory statement that is orally communicated or published to a third person without legal excuse. 
Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995).