NO. 07-06-0190-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



MAY 30, 2008


______________________________



JOSEPH M. JOHNSON, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2005-410946; HONORABLE JIM BOB DARNELL, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Appellant Joseph Mark Johnson appeals from his conviction by jury of the offense
of possession of cocaine with intent to deliver and his sentence of twenty years
confinement in the Institutional Division of the Texas Department of Criminal Justice. Via
two points of error, appellant contends the trial court erred by admitting evidence of an
extraneous offense and by allowing improper jury argument. We affirm.


Background

 Appellant was indicted for knowingly possessing cocaine, with intent to deliver, in
an amount more than one gram but less than four grams, based on events occurring in
January 2004. (1) The indictment also contained an enhancement paragraph, setting forth
appellant's prior felony conviction for burglary of a habitation. (2) Following appellant's plea
of not guilty, this matter proceeded to trial. 

 The State's evidence described a "buy-walk" operation by which an informant, Oscar
Fira, accompanied an undercover narcotics officer to appellant's residence. Fira and the
undercover officer testified at trial that the officer remained in his car while Fira approached
the residence, brought appellant to the vehicle and introduced him to the officer, who
completed his purchase of crack cocaine from appellant. Another officer testified he was
part of the "listening team" who monitored the undercover buy. The evidence also included
an audio recording of conversation during the transaction. Fira was paid $150.00 for his
participation in the operation.


 Appellant testified, denying he committed the offense. The jury returned a verdict
of guilty, and the court assessed the punishment we have described. This appeal followed.

Analysis

Admissibility of Evidence Pursuant to Texas Rule of Evidence 404(b) In appellant's first point of error, he argues the trial court erred by allowing the State
to introduce evidence of a similar transaction occurring in September 2003, for which
appellant's prosecution was then pending. His trial objection to admission of the
extraneous offense evidence cited Texas Rules of Evidence 404(b) and 403.

 Rule of Evidence 404(b) provides that evidence of other crimes, wrongs or acts is
not admissible to prove the character of a person in order to show action in conformity
therewith, but such evidence may be admissible to show "motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid.
404(b). Merely introducing evidence for a purpose other than character conformity, or any
of the other enumerated purposes in Rule 404(b), does not, by itself, make that evidence
admissible. Rankin v. State, 974 S.W.2d 707, 709 (Tex.Crim.App. 1996). Whether
objected-to evidence of "other crimes, wrongs, or acts" has relevance apart from character
conformity, as required by Texas Rule of Evidence 404(b), is a question for the trial court. 
Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g). An
appellate court owes no less deference to the trial judge in making this judgment than it
affords him in making any other relevancy call; that is, such a decision is reviewed for
abuse of discretion. Id. Therefore, as long as the trial court's ruling was within the zone
of reasonable disagreement, we will not intercede. Id.

 After appellant's testimony, the trial court allowed the State to present evidence that
in September 2003, undercover officers accompanied another informant, Nora Diaz, (3) to
appellant's residence where they completed the purchase of $100 of crack cocaine from
him. When it overruled appellant's trial objection to admission of the evidence, the trial
court noted its finding the evidence was admissible to show appellant's intent, knowledge
and identity. (4) On appeal, the State primarily argues the evidence was properly admitted
on the issue of appellant's identity. Appellant contends his identity as the perpetrator of
the offense was not placed at issue, and that the extraneous offense evidence was thus
not relevant to a fact of consequence. We agree with the State. 

 During his direct testimony, appellant described the block on which his duplex
residence was located. His description included a reference to a residence near his, in
which a number of people lived. He said 12 to 15 people stayed there and many of them
commonly congregated outside, "all in the parking lot, on the sidewalk, and by the phone
booth [on the corner]." He said there was drug activity, and testified he called the duplex
manager several times to "tell about people selling on the corner." He further testified
people knocked on his door, seeking drugs, and told of being asked, "Is Mark there?" He
said he once heard a man on the street identify himself as Mark, and referred to others "on
the street named Mark." Appellant noted, "but my name is Mark also." He went on to
testify that "they" were "actually selling drugs in that area," and that "they" sometimes
waved passing cars down for that purpose. 

 The trial court was within its discretion to find appellant's testimony placed his
identity at issue. See Lane v. State, 933 S.W.2d 504, 519 (Tex.Crim.App. 1996); Smith
v. State, 211 S.W.3d 476, 479 (Tex.App.-Amarillo 2006, no pet). Indeed, it is difficult to
see that appellant's testimony associating other people named Mark with drug dealing
outside his duplex had any goal other than to suggest that Fira and the officer had bought
their drugs from another Mark. We find no abuse of discretion in the trial court's conclusion
that admission of evidence of appellant's sale of cocaine, four months before, from the
same location in the same manner, (5) was permissible under Rule 404(b). 

Rule 403 Exclusion of Relevant Evidence

 Under Rule of Evidence 403, evidence that is relevant may be excluded if its
probative value is "substantially outweighed by the danger of unfair prejudice, confusion
of the issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence." Tex. R. Evid. 403. When conducting the balancing
test under Rule 403, the trial court determines whether the probative value of the evidence
is substantially outweighed by one of the countervailing considerations listed in the rule. 
Id. A trial court must balance (1) the inherent probative force of the proffered item of
evidence along with (2) the proponent's need for that evidence against (3) any tendency
of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence
to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be
given undue weight by a jury that has not been equipped to evaluate the probative force
of the evidence, and (6) the likelihood that presentation of the evidence will consume an
inordinate amount of time or repeat evidence already admitted. Casey v. State, 215
S.W.3d 870, 880 (Tex.Crim.App. 2007).

 Appellant reiterates his contentions identity was not at issue, and the extraneous
offense evidence thus was not directed at a fact of consequence. He also contends the
State had little need for the evidence, noting the prosecutor characterized the case to the
jury as a "simple case." He also complains that evidence of the 2003 offense took a
considerable amount of time to present to the jury and thus posed the danger of confusing
the issues to be tried. As noted, we find the trial court was within its discretion to find
appellant placed his identity at issue through his testimony, and the extraneous offense
evidence was probative of a fact of consequence. We see little risk the evidence
suggested to the jury a decision on an improper basis, or confused or distracted the jury. 
The trial court's instruction reduced the risk the jury would make improper use of the
evidence. Presentation of the evidence took some time, but we do not find it inordinate. 
The trial court did not abuse its discretion by overruling appellant's Rule 403 objection. We
overrule appellant's first issue.

Improper Jury Argument

 By his second issue, appellant asserts the prosecutor engaged in improper argument
when she told the jury, "And some people do force 12 people of their community to make
them take responsibility, and today is that day." Appellant contends the statement was a
negative comment on his exercise of his right to a jury trial. At the same time, appellant
acknowledges he did not object to the prosecutor's argument at trial, and correctly notes 
that binding authority holds that failure to object to jury argument forfeits an appellant's
complaint on direct appeal. Cockrell v. State, 833 S.W.2d 73, 89 (Tex.Crim.App. 1996),
cert. denied, 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997). See also Threadgill
v. State, 146 S.W.3d 654, 670 (Tex.Crim.App. 2004). Finding appellant's second point of
error presents nothing for our review, we overrule it, and affirm the judgment of the trial
court.

 James T. Campbell 

 Justice





 Do not publish.
1. See Tex. Health & Safety Code Ann. § 481.112(c) (Vernon 2001). This is a
second degree felony punishable by imprisonment for any term of not more than 20 years
or less than 2 years and a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.33
(Vernon 2003). 
2. Appellant's sentence was enhanced pursuant to Penal Code § 12.42. Tex. Penal
Code Ann. § 12.42 (Vernon 2007).
3. Diaz testified she was Fira's wife. 
4. By instruction, the court limited the jury's consideration of the evidence to those
purposes.
5. Before evidence of an extraneous offense can be used to establish identity, the
extraneous offense "must be so similar to the offense charged that the offenses are
marked as the accused's handiwork." Smith, 211 S.W.3d at 479, citing Lane, 933 S.W.2d
at 519. Here, appellant does not deny the two drug transactions were sufficiently similar
to make the September 2003 offense relevant to the issue of the identity of the seller in the
January 2004 transaction.



t for $13 million was false because the report was based on
an architect's estimate. 

 However, it is undisputed that this was an estimate only and that it was not based
on actual plans drawn up by the architects (6) and was not shown to include costs associated
with compliance on the Texas Commission on Jail Standards. It also did not include costs
associated with landscaping, furnishings, and ancillary buildings required by the sheriff's
department, for which those items had been left blank in the report. Thus, there is nothing
to show that the costs associated with construction of the jail would only be $12.46 million
and the fact that Dawkins might have been wrong in her belief that those additional costs
would have been more than $13 million or that there might have been an architect or
engineer who actually believed the total cost would be less than $13 million is not evidence
of malice. It must be shown that Dawkins entertained doubts about her assertion as to
what the architects and engineers believed. See Colson v. Grohman, 24 S.W.3d 414, 422
(Tex.App.--Houston [1st Dist.] 2000, pet. denied). 

 Wood argues that even if the committee report did not show a knowledge of falsity
with respect to what other engineers or architects believed, it still shows a knowledge of
falsity with respect to her statement that, prior to May 1998, Wood knew that the cost to
construct the jail would be $16 million. This is particularly so, Wood contends, in light of
the fact that Dawkins's affidavit and deposition testimony shows that she obtained the $16
million figure from a newspaper article published on October 13, 1999, which reported a
$3 million increase in the cost of the jail. Dawkins further testified in her deposition that at
the time of the May 1998 bond election, Wood and the other commissioners had no idea
what the jail was going to cost. In any event, Wood asserts, this evidence is sufficient to
raise a fact issue which the jury should determine. 

 However, it is also undisputed that Wood made statements publicly before the bond
election that the jail would be a $20 million project. Although Wood claims he was
including financing in those costs, which may be true, that distinction was either not made
at all or did not delineate what portion of the $20 million was made up of financing costs,
and thus Dawkins could well have believed that Wood knew prior to the bond election that
the cost would be higher than $13 million. She also knew by the time of her letter that the
costs were in fact at least $16 million. Assuming, without deciding, that the first two
paragraphs of Dawkins's letter gave a false impression to the public that Wood knew the
cost of the jail would actually be $16 million at the time of the bond election, there is still
no evidence that Dawkins did not believe that statement to be true. The presentation of
facts may be negligently misleading, but does not establish actual malice unless there is
evidence that the author knew or strongly suspected that the publication as a whole was
misleading. Turner, 38 S.W.3d at 120. Further, the falsity of a statement alone or a failure
to investigate the truth does not show malice. El Paso Times, Inc. v. Trexler, 447 S.W.2d
403, 406 (Tex. 1969); Freedom Communications, Inc. v. Brand, 907 S.W.2d 614, 620, 622
(Tex.App.--Corpus Christi 1995, no writ); Johnson v. Southwestern Newspapers Corp., 855
S.W.2d 182, 188 (Tex.App.--Amarillo 1993, writ denied).

 Wood additionally argues that the affidavit of Brian Barrett raises proof of malice. 
Barrett also served on the citizens committee, and he stated that he believed the estimated
cost of $12.46 million to be conservative. Further, when he took office as a Randall County
Commissioner on January 1, 1999, he did not anticipate that it would be necessary to
borrow any more than $12.46 million to build a jail. However, in September 1999, he was
informed by one of the architects that the cost to build the jail would be about $16.2 million,
which was the first time he learned the county would need to borrow more money. Even
accepting all of these facts as true, they do not raise a fact issue as to malice. The fact
that Dawkins and Barrett may have differed in their beliefs as to the cost of the new jail at
the time of the committee report, the 1998 bond election, or even during the first part of
1999 does not constitute evidence of malice. Gaylord Broadcasting Co., L.P. v. Francis,
7 S.W.3d 279, 284-85 (Tex.App.--Dallas 1999, pet. denied); American Broadcasting
Companies, Inc. v. Gill, 6 S.W.3d 19, 37 (Tex.App.--San Antonio 1999, pet. denied),
overruled on other grounds by Turner v. KTRK Television, Inc., 38 S.W.3d 103 (Tex.
2000). 

 Dawkins stated in her affidavit that she based her statements on (1) her past
experience with respect to construction costs, (2) her knowledge that certain costs were
not included in the estimate, (3) her knowledge the estimate was not based on actual
architectural drawings, (4) her understanding that the jail commission had not approved
any plans, (5) statements made by Wood prior to the bond election that the cost of the jail
facility would be $20 million, and (6) a newspaper article in 1999 that the costs had
increased to $16 million. These statements show the basis of Dawkins's belief and, even
if wrong, we believe her affidavit is sufficient to negate the element of malice in the
absence of controverting evidence. Although the parties quibble over what expenses were
actually included at various times by the other party when reference was made to the cost
to construct the new jail, those differences in understanding or meaning do not show that
Dawkins did not have a reasonable basis for her belief. 

 Having found that Dawkins's summary judgment may be sustained on the basis that
malice does not exist, it is not necessary for us to address Wood's contentions as to the
other elements of defamation. Accordingly, we affirm the judgment. 


 John T. Boyd

 Chief Justice


Publish.


 

 

 

 

 

 
1. The letter was also sent to the Amarillo Daily News, but did not appear in the
newspaper.
2. The title was apparently supplied by the newspaper.
3. Although couched as Wood's first issue, this is not really a claim of error on the part
of the trial court which we are being asked to review, but really is a rule of analysis being
urged on us by Wood. 
4. Wood does not complain of the use of the words "shifty" and "subterfuge."

5. Both parties appear to argue only the merits of the traditional motion for summary
judgment in their briefs. 
6. In fact, it is undisputed that, at one of the Randall County Commission meetings,
Wood declined to second a motion of one of the other commissioners which would have
required the commission to obtain actual plans and specifications before proposing a bond
election.